UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARELIOUS REED,

    Plaintiff                                        Civil Action No. 05-70243

v.                                               HON. LAWRENCE P. ZATKOFF
                                                 U.S. District Judge
                                                 HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL           U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Arelious Reed brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment be denied.

## PROCEDURAL HISTORY

On August 22, 2002, Plaintiff filed an application for benefits, alleging an onset date of April 21, 2002 (Tr. 45-47). After the denial of his claim, Plaintiff filed a request for an administrative hearing, held on June 3, 2004 in Oak Park, Michigan before Administrative

Law Judge (ALJ) Henry Perez.  Plaintiff, represented by attorney Laura Ingle, testified. (Tr. 115-121, 122-124).  Elaine Tripi, acting as Vocational Expert (VE) also testified (Tr. 121-122, 124-126).  ALJ Perez found that Plaintiff was not disabled because although unable to perform his past relevant work as a driver or general laborer, he retained the residual functional capacity to perform a range of sedentary and light work, found in significant numbers in the national economy (Tr. 21).  On November 23, 2004, the Appeals Council denied review (Tr. 3-5).  Plaintiff filed for judicial review of the final decision on February 23, 2005.

## BACKGROUND FACTS

Plaintiff, born March 31, 1979, was age twenty-five when the ALJ issued his decision (Tr. 18, 45).  He graduated from high school and attended college for one year (Tr. 18).  He worked previously as a driver and general laborer (Tr. 18).  Plaintiff alleges disability to due to sleep apnea, side effects from medication, and obesity[1] (Tr. 18, 9-13).

### A.    Plaintiff's Testimony

Plaintiff, twenty-five, stated that he could no longer work due to drowsiness caused by sleep apnea (Tr. 116).  He testified that his condition obliged him to use an inhaler on a daily basis (Tr. 117).  He reported that he used a CPAP at night to ensure that he did not stop breathing (Tr. 118).  He stated that in addition to Proventil, which he used in conjunction

---

[1]As noted by the Appeals Council Action of November 23, 2004 (Tr. 3-4), Plaintiff did not allege disability due to obesity before or during the administration hearing, raising his obesity argument for the first time in his attorney's brief to the Appeals Council (Tr. 9-13).

with his inhaler, he also took Singulair with his meals (Tr. 118). He stated that he experienced regular drowsiness (Tr. 119).

Plaintiff reported that he generally arose at 10:00 a.m. (Tr. 119). He denied preparing his own meals, attributing his inability to cook to his penchant for falling asleep without notice (Tr. 120). He testified, however, that he continued to drive, adding that he never drove unaccompanied (Tr. 121).

Plaintiff reported that before the onset of his alleged disability, he had worked most recently as a bus driver for the City of Detroit, and that prior to working for the City, he had worked for a private company which specialized in transporting school children (Tr. 122-123). He stated that before he became a driver, he had performed temporary work stacking twenty to forty pound boxes in a warehouse (Tr. 124).

### B.     Medical Evidence

In July, 2002, echocardiography showed normal valve chamber size, preserved systolic function and an absence of pericardial effusion (Tr. 84). In July, 2002, Plaintiff underwent a polysomnogram which showed "[v]ery severe obstructive apneas" (Tr. 86). Plaintiff reported a history of loud snoring and daytime somnolence (Tr. 86). Jeremy Cole, M.D., recommended a nasal CPAP/BiLivel titration study (Tr. 86). In August, 2002, Narinder K. Sherma, M.D., ordered a CT of Plaintiff's lumbar spine, apparently in response to his complaints of back pain from a football injury (Tr. 99). Test results showed normal results (Tr. 99). Also in August, 2002, Plaintiff reported taking Naproxen, adding that it caused drowsiness (Tr. 73).

In March, 2004, Dr. Sherma completed a Residual Functional Capacity questionnaire, diagnosing Plaintiff with obstructive sleep apnea syndrome (Tr. 108).  He reported that Plaintiff complained of insomnia, obesity, excessive daytime sleepiness, and fatigue, noting that Plaintiff currently used a Bipap to treat his sleep apnea (Tr. 109).  Deeming Plaintiff's prognosis as "guarded," he opined that he should avoid work involving climbing, power machines, and the operation of motor vehicles (Tr. 108).  He found that he retained only a "severely" limited ability to carry out simple instructions; maintain attention; work without supervision or at a normal pace; and maintain socially appropriate behavior (Tr. 111).

### C.     Vocational Expert Testimony

VE Elaine Tripi classified Plaintiff's previous work as a general laborer as unskilled, at the medium level of exertion (Tr. 125).  She classified his past work as a driver as semi-skilled at the light exertional level, adding that his driving jobs contained no transferable skills (Tr. 125).  The ALJ then asked the VE if any jobs were available to a hypothetical individual with the following limitations:

> "Taking [Plaintiff's] age, education, and work experience into account[,] assume that we have no exertional limitations on lifting established and we impose the following limitations consisting of no climbing, jobs that would avoid concentrated exposure to hazards such as heights, moving machinery, and driving, and power machines.  And if we put this individual at the semi-skilled level could such a person be expected to perform the [Plaintiff's] past relevant work?

(Tr. 125).

The VE found that given the above limitations, Plaintiff could not perform his previous work, but retained the residual functional capacity (RFC) to perform sedentary

-4-

work, including unskilled bench work which would not require proximity to moving machinery or hazardous machinery (Tr. 125). She stated that Plaintiff could also perform jobs involving sorting, packing, visual inspection, and assembly work (Tr. 125). She stated that approximately 15,000 such jobs existed in the Detroit area at the sedentary level of exertion, adding that the number would be doubled if the positions were to include light, as well as sedentary duties (Tr. 125-126).

**D.     The ALJ's Decision**

ALJ Perez found that Plaintiff was not disabled based on the criteria set forth in the Social Security Act (Tr. 20). He determined that Plaintiff had the severe impairments of back pain, sleeping problems, and sleep apnea, finding however that Plaintiff's impairments did not "meet or medically equal one of the listed impairment found in Appendix 1, Subpart P, Regulation No. 4" (Tr. 20).

The ALJ found that while Plaintiff was unable to perform any past relevant work, he retained the RFC for a significant range of sedentary and light work, reduced by his inability to perform jobs involving climbing, driving, or working around heights or power machinery (Tr. 21). The ALJ found that Plaintiff could perform the work of a bench sorter, packager, and visual inspector, adopting the VE's job numbers estimate given at the hearing, Section **C**., *supra* (Tr. 20,21).

The ALJ supported his non-disability determination by stating that he did not find Plaintiff "entirely credible as to his allegations of an inability to work" (Tr. 19). He noted that Plaintiff's regular activities included driving, meal preparation, and social visits (Tr. 19).

He rejected a portion of Dr. Sherma's conclusions, observing that his some of his opinions stood unsupported by corroborating evidence (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[2]

---

[2]Plaintiff, now *pro se*, submitted a one paragraph motion for summary judgment, reiterating his need for benefits, but understandably, did not provide the court with a legal basis for his request for an award of benefits. However, *pro se* pleadings are liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Following the administrative determination, Plaintiff's former attorney submitted a brief to the Appeals Council requesting either an award of benefits or a remand for further proceedings, citing five "significant errors of law and fact" (Tr. 9-13). Consistent with principles of liberal construction of *pro se* pleadings, the Court will construe the Plaintiff's motion for summary judgment as including the five issues presented to the Appeals Council. Issues 1 and 2, which allege that the ALJ failed to consider the effects of Plaintiff's obesity, may be discussed in tandem (Tr. 9). Likewise, issues 3 and 4, both of which discuss the ALJ's treating physician analysis, may be combined (Tr. 9). The former counsel's fifth argument pertains to Plaintiff's alleged side effects from his medication and will be discussed

### A. Obesity

Plaintiff's submission to the Appeal's Council maintains that the ALJ erred by failing to list obesity as one of his severe impairments at Step Two of his analysis (Tr. 9). He argues further that the Step Two omission tainted his conclusions, which failed to take into account the effects of obesity on his ability to work (Tr. 9).

20 CFR § 416.921(a) defines a non-severe impairment which does not require inclusion at Step two as one that does not "significantly limit [the] physical or mental ability to do basic work activities." The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." *Id.* The court in *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985) found that "the second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." The court cautioned that an "overly stringent interpretation of the severity requirement would violate the statutory standard for disability by precluding administrative determination of the crucial statutory question [of] whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be

---

independently (Tr. 9).

expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris,* 773 F.2d at 90; *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984).

According to the Centers for Disease Control and Prevention (CDC), Plaintiff's height and weight, 5' 11", 230 pounds, shows a Body Mass Index (BMI) of 32.1, indicating mild obesity. However, pursuant to Social Security Ruling (SSR) 02-1p, obesity, standing alone does not constitute a disability, but nonetheless should be considered in combination with other impairments in determining whether the claimant is disabled. The administrative findings need not contain an explicit reference to the claimant's obesity if the decision as a whole appears to have adopted limitations resulting from obesity. *See Rutherford v. Barnhart,* 399 F.3d 546, 552-53 (3d Cir.2005); *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004).

The dearth of obesity references in the administrative decision does not mandate remand for a number of reasons. First, Plaintiff did not allege limitations as a result of obesity in his application for benefits or at his hearing, raising his obesity argument for the first time in his submission to the Appeals Council (Tr. 9-11). Likewise, although one of Plaintiff's physicians checked "obesity" as one of several of his conditions, none of his care providers suggested that obesity in and of itself limited his work abilities (Tr. 108). Moreover, Plaintiff's sleep apnea condition, which can be in part attributable to his weight, was discussed at length by the ALJ (Tr. 18). *See Guadalupe v. Barnhart,* 2005 WL 2033380, 6 (S.D.N.Y.,2005) (The ALJ did not commit reversible error by excluding an obesity

discussion from his findings where his decision "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity and determined that it did not impose a functional limitation on light work."). Most fundamentally, the ALJ's exclusion of obesity as a Step Two impairment does not mandate remand since pursuant to 20 CFR § 416.921(a), Plaintiff has not established that obesity significantly (or even minimally) limits his ability to perform light work.

### B.     Treating Physician

Plaintiff maintains further that the ALJ erred in adopting a portion of his treating physician's findings without citing reasons for rejecting other sections of the same opinion which suggest disability (Tr. 9, 11).  In a related argument, he submits that the ALJ violated 20 C.F.R. Sec. 404.1527(d) by failing to give proper weight to the opinion of his treating physician  (Tr. 12).

In *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) the court held that  "it is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight.  If uncontradicted, the physicians' opinions are entitled to complete deference." In *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544  (6th Cir. 2004) the court stated:

> "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

As discussed by Plaintiff, the "ALJ must 'give good reasons' for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2) (2004).

However, contrary to Plaintiff's argument, the ALJ performed a sufficiently thorough analysis of Dr. Sherma's opinion and provided ample reasons for declining to give it controlling weight. While acknowledging Dr. Sherma's status of treating physician, the ALJ cited several legitimate reasons for rejecting portions of his findings. First, pursuant to *Wilson, supra,* the ALJ noted that Dr. Sherma's findings that Plaintiff experienced substantial cognitive and social limitations stood unsupported by any other record of evidence such as psychiatric evaluations[3] (Tr. 18). The ALJ pointed out that although Dr. Sherma opined that Plaintiff's ability to perform gainful employment was severely limited by various conditions, Plaintiff's treatment record had been "essentially routine and conservative in nature" (Tr. 18). The ALJ stated further that he declined to adopt Dr. Sherma's opinion in its entirety based on the reasonable conclusion that in the absence of clinical documentation supporting the degree of limitation alleged, Dr. Sherma had "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff]" (Tr. 19). Likewise, the ALJ found that Dr. Sherma's opinion was

---

[3]At the time of Plaintiff's disability application, his DDS interviewer noted that he exhibited difficulty in the categories of understanding, coherency, and concentration, noting that he was currently taking pain medication (Tr. 62). He told the interviewer that he took both Naproxen and Cyclobenzaprine, to which he attributed his lack of alertness (Tr. 72-73). As discussed further in Section **C**., *infra,* Plaintiff had discontinued his use of pain medication prior to the hearing, reporting that his back pain had ceased (Tr. 116).

not only uncorroborated, but contradicted by other portions of the record, noting that Plaintiff admitted to activities inconsistent with the degree of disability alleged. He commented that Plaintiff continued to drive, prepare meals, shop, and visit (Tr. 19 *citing* 75-76). The ALJ's findings, which adopted Dr. Sherma's conclusion that Plaintiff experienced sleep apnea, noted that this view, unlike other portions of the physician's conclusions, was supported by other evidence of record (Tr. 19, 86). Pursuant to *Wilson, supra,* the ALJ's properly articulated his reasons for adopting only a portion of the treating physician's findings.

### C. Side Effects

Finally, Plaintiff argues that the ALJ violated SSR 96-8p in failing to consider the side effects of Plaintiff's medication in determining his RFC (Tr. 9, 13). His Appeals Council submission states that "[his] medications include Naprosyn, Flexeril, Proventil, Singulair, and Advair," asserting that "the ALJ reported that Naprosyn, Flexeril, Provental, and Singulair cause drowsiness" (Tr. 13).

This argument contains a number of errors. First, at the time of the hearing, Plaintiff denied continuing back problems which would oblige him to take pain-killers, stating that he only took Provental and Singulair (Tr. 117, 118). A "Claimant's Medications" questionnaire he filled out prior to the hearing also states that he took only Provental and Singulair (Tr. 83). Next, Plaintiff incorrectly states that the ALJ acknowledged that he took Naprosyn, Flexeril, Provental, and Singulair. Consistent with Plaintiff's testimony and medications statement, the ALJ stated only that Plaintiff "uses an inhaler twice a day and takes Proventil and Singulair for his breathing problems. The medication causes drowsiness

as a side effect"[4] (Tr. 18).

Having determined that Plaintiff had ceased taking any medication but Provental and Singulair by the time of the hearing, Plaintiff's argument fails for additional reasons. *Physician's Desk Reference* (PDR) does not list drowsiness or fatigue as side effects of Proventil. *See* http://www.pdrhealth.com. While the PDR states that Singulair can cause either fatigue or drowsiness, the "Claimant's Medications" form completed by Plaintiff indicates, contrary to his testimony, that he only took Singulair in the evening, suggesting that any side effects would not preclude daytime employment (Tr. 83).

Even assuming that Plaintiff actually took Singulair with his meals, substantial evidence still supports the ALJ's RFC. While the ALJ did not conduct an in-depth discussion of his reasons for rejecting Plaintiff's allegations of side effects, he was not required to do so. *Welch v. Commissioner of Social Security* 2003 WL 22258196, 5 (E.D.Mich.,2003); *Anderson v. Bowen,* 868 F.2d 921, 924 (7th Cir.1989). The ALJ discussed and justifiably rejected that portion of Plaintiff's unsupported allegations. Plaintiff stated that although he slept ten hours a night, his condition obliged him to nap eight to ten times a day for approximately thirty minutes (Tr. 120). Although his testimony suggests a truly debilitated state, as pointed out by the ALJ, Plaintiff's treatment had been "essentially routine and conservative in nature" (Tr. 18).

---

[4]In the previous paragraph, the ALJ referenced Plaintiff's previous use of Naprosyn and Flexeril, but noted that Plaintiff denied both back pain and the use of medication other than Proventil and Singulair at the hearing (Tr. 18).

Other inconsistencies in the record support the ALJ's rejection of a portion of Plaintiff's allegations. Plaintiff testified at the hearing that he did not make his own breakfast "because he might fall asleep," but admitted that he continued to drive an automobile (Tr. 121). Plaintiff conditioned this statement by adding that he never drove unaccompanied, stating that he always took a family member or friend to "tap" him in case he fell asleep (Tr. 121). Plaintiff did not explain how he induced friends and family members to ride as passengers in a automobile where the driver might unexpectedly lose consciousness at any moment. In contrast to this testimony, he indicated in a questionnaire he completed in 2002 that he had a high chance of falling asleep "while sitting and talking to someone," but had only a slight chance of dozing "in a car, while stopped for a few minutes in traffic" (Tr. 88). He indicated that he sometimes drove himself up to thirty-five miles to shop for either food or clothes (Tr. 76). In addition, although he alleged disability based on his need to sleep for a total of approximately fourteen hours a day, Plaintiff's motion for summary judgment indicates that he sought benefits, at least in part, for the purpose of enrolling for classes at Wayne State University. *Plaintiff's Motion for Summary Judgment* at 1. Substantial evidence supports the ALJ's credibility determination, including his rejection of Plaintiff's allegations of constant drowsiness. Indeed, Plaintiff testified that what was apparently one of his primary reasons for seeking benefits - back pain and medication causing significant side effects - abated at some point between his application and the administrative hearing (Tr. 116).

Based on a review of this record as a whole, the ALJ's decision is well within the

-14-

"zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                    S/R. Steven Whalen
                    R. STEVEN WHALEN
                    UNITED STATES MAGISTRATE JUDGE

Dated: November 15, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 15, 2005.

                    S/Gina Wilson
                    Judicial Assistant